# EXHIBIT 5

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

9/4/2024 2:55:01 PM

Clerk of the Superior Court
By T. Pacheco            ,Deputy Clerk

Jane Roe MB 4Michael W. Carney, State Bar No. 241564
Lauren A. Welling, State Bar No. 291813
Sarah Kissel Meier, State Bar No. 305315
**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Telephone: (310) 341-2086
Fax: (310) 773-5573
E-mail: *MCarney@sssfirm.com*
        *LWelling@sssfirm.com*
        *Skmeier@sssfirm.com*

Attorneys for Plaintiff John Roe JS 6

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| John Roe JS 6,<br><br>             Plaintiff,<br><br>   v.<br><br>THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, a nonprofit corporation; SAN DIEGO CALIFORNIA SOUTH STAKE, also known as THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS, an entity of unknown form; and DOES 4 to 100,<br><br>             Inclusive,<br><br>             Defendants. | Case No.:   24CU015007C<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **NEGLIGENCE**<br>2. **NEGLIGENT SUPERVISION OF A MINOR**<br>3. **SEXUAL ABUSE OF A MINOR**<br>4. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION**<br>5. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF**<br>6. **BREACH OF MANDATORY DUTY**<br><br>**[DEMAND FOR JURY TRIAL]** |

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Plaintiff, John Roe JS 6, of and for his causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1.      This case involves egregious sexual and emotional abuse of a child.

2.      Beginning when Plaintiff John Roe JS 6 was only 16 years old, he was sexually abused on a biweekly basis by the foremost religious authority within Defendants' Imperial Beach Ward. The abuse was allowed to continue for a full year, always on Defendants' premises immediately following Defendants' bible study classes.

## PARTIES

3.      Plaintiff John Roe JS 6 ("**Plaintiff**") is an adult male under the age of forty at the time of this filing and at all times relevant herein, a resident of San Diego County, California. As a victim of childhood sexual assault, as defined by section 340.1 of the Code of Civil Procedure, the name "John Roe JS 6" is not the Plaintiff's actual name, but is a fictitious name utilized to protect his privacy. John Roe JS 6 is entitled to protect his identity in this public court filing by not disclosing his name. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme misconduct by Perpetrator, hereinafter referred to as "**Perpetrator Smith**."

4.      Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning his identity and making his identity public, as such a public disclosure would further harm Plaintiff and his family.

5.      Defendant The Church of Jesus Christ of Latter-day Saints (hereinafter "Church"), is and was at all relevant times herein mentioned, the religious entity, located at San Diego, California, through which Perpetrator Smith held and used his position as "Bishop" to groom and sexually abuse Plaintiff. The Church of Jesus Christ of Latter-day Saints is a nonprofit corporation duly organized and operating pursuant to the laws of the State of Utah. The Church operates wards,

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

meetinghouses, congregations, temples and other houses of worship within the State of California. The Church does business with and conducts continuous and systemic activities in California. The Church of Jesus Christ of Latter-day Saints' principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.  The Church is registered to do business in California, and the presiding Bishop serves at the pleasure of and subject to the direct and absolute control of The Church. The divisions of the Church are the wards, stakes and areas. The Church of Jesus Christ of Latter-day Saints is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

6.     Defendant The Temple Corporation of The Church of Jesus Christ of Latter-day Saints (hereinafter "Temple Corporation") is and was at all relevant times herein mentioned, a religious entity and subsidiary of the Church. The Temple Corporation is a nonprofit corporation duly organized, and operating pursuant to the laws of, the State of Utah. The Temple Corporation operates properties, temples and other houses of worship within the State of California. The Temple Corporation does business with and conducts continuous and systemic activities in California. The Temple Corporation's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.  The Temple Corporation is registered to do business in California, and operates, maintains and manages the Church's properties at the direction of and under the control of the Church. The Temple Corporation, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

7.     The San Diego California South Stake, also known as The Church of Jesus Christ of Latter-Day Saints, is and was at all relevant times herein mentioned, a religious entity and subsidiary of The Church. The San Diego California South Stake is a religious entity of unknown form duly organized, and operating pursuant to the laws of, the State of California. The San Diego California South Stake does business with and conducts continuous and systemic activities in California. The San Diego California South Stake's principal place of business is 1590 East H Street, Chula Vista, CA 91913.  The San Diego California South Stake is registered to do business in California, and operates, maintains and manages The Church's congregations and wards within San Diego County at the direction

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

of and under the control of The Church. The San Diego California South Stake has, or as alleged herein had, responsibility for some or all operations in San Diego County, California. The San Diego California South Stake reports directly to The Church. The San Diego California South Stake, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

8.      The Defendants each assumed responsibility for the wellbeing of their members, whether as clergy or volunteers appointed by the Church. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday School and Primary School teacher; Defendants and their agents placed individuals in positions of responsibility and authority over Church members. As a result, they each had a special relationship with members of the congregation, including the minor Plaintiff as a prospective member and attendee of the Church. This relationship gave rise to a duty to protect members, prospective members, and attendees of the congregation, including the minor Plaintiff from a foreseeable risk of harm. At all relevant times, the Defendants assumed special responsibilities towards its members including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members, prospective members, and attendees of the Church from the harm they might inflict.

9.      Defendants' income comes from member tithes which are turned over to the Church for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes and areas. The Church does not provide information about their finances to their members or the public. Upon information and belief, the Church receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, The Church of Jesus Christ of Latter-day Saints owns financial assets and real estate in excess of 200 billion dollars.

10.     The true name[s] and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 4 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

11.    Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

12.    All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate business Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and approved of each and all said acts, conduct or nonfeasance of their co employees, employees and agents.

13.    Perpetrator Smith was an employee, agent, servant, member, and/or volunteer of Defendants when he sexually assaulted the Plaintiff—then a minor.

14.    During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants supervised and exercised control over Plaintiff's abuser.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

15.     Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

16.     Except as otherwise noted, a reference to "Defendants" in this Complaint shall include The Church, The Temple Corporation, The San Diego California South Stake, and DOES 4 through 100, inclusive.

## JURISDICTION AND VENUE

17.     This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of San Diego and the State of California.

18.     The subject incidents upon which this Complaint are based occurred in the City of San Diego, within the County of San Diego, in the State of California. As such, venue is proper in the San Diego County Superior Court of California.

## FACTUAL ALLEGATIONS
### (Common to All Causes of Action)

19.     The Church of Jesus Christ of Latter-day Saints is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

20.     The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

21.     Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

22.     The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the

---

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng

[2] [LDS] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

23.     Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

24.     Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

25.     Plaintiff John Roe JS 6 was a minor child, prospective member, and regular attendee of Defendants' Church, in San Diego, California.  Perpetrator Smith was a "Bishop" of the Church and used his position of authority therein to groom and to sexually abuse Plaintiff. Abuse by Perpetrator Smith began when Plaintiff was just 16 years old. Intent on manipulating Plaintiff's emotions and taking advantage of his innocence, so that he eventually could sexually abuse him, Perpetrator Smith exploited Plaintiff's fragile mental state to cause him extreme fear, anxiety, and confusion; coercing and manipulating Plaintiff in order to gain further power and control over him. All tactics employed for abuse purposes occurred during the most vulnerable time of Plaintiff's life.

26.     Eventually, Perpetrator Smith initiated extreme sexual abuse of Plaintiff. Plaintiff endured ongoing, humiliating events of child molestation by Perpetrator Smith, a figure of religious authority, whom Plaintiff had been taught to trust with his life and well-being and had never been given the choice but to trust.

27.     Plaintiff is informed and believes and thereupon alleges, that, at all times herein

---

[3] [LDS] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

[4] [LDS] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

mentioned, Defendants knew Perpetrator Smith was using his position of authority within The Church of Jesus Christ of Latter-day Saints to groom and to sexually abuse one of its minor prospective members and regular attendees, Plaintiff, and Defendants failed to take reasonable steps to protect him.

28.     Perpetrator Smith, engaged in fondling, oral intercourse, and anal rape with Plaintiff at Defendants' controlled meetings on Defendants' property.

29.     From 2015 to 2016, abuse took place in classrooms on Defendants' premises.

30.     Prior to the first incident of abuse in 2015, and at all times thereafter, Defendants, bishops and/or counselors knew, should have known, reasonably suspected, or were otherwise on notice of the ongoing verbal, physical and sexual abuse by Perpetrator Smith. The sexual abuse involved the highest religious authority within the congregation, the "Bishop," repeatedly isolating Plaintiff in a classroom separate from other Church members. As the abuse took place immediately after bible studies led by Perpetrator Smith, there were other members of the congregation in the vicinity, members Perpetrator Smith and Plaintiff had to walk by to get to the abuse location. Whereas the first occurrence of these events leading up to the abuse would have been concerning, the notice provided to Defendants only continued to strengthen as Perpetrator Smith continued abusing Plaintiff every other week for a year. Despite the unusual "private tutoring" relationship formed, and the private meetings lasting upwards of 45 minutes at times, no investigation took place, nor was Plaintiff ever approached about the nature of these meetings. Conspicuously, each meeting between Perpetrator Smith and Plaintiff was not in the "Bishop's" office, nor was Plaintiff aware of anyone else from the bible study receiving "private tutoring." It was or should have been clear that Perpetrator Smith was using his position to target and isolate minor Plaintiff, resulting in extreme sexual abuse over the course of a year.

31.     In 2015, Plaintiff was a regular attendee of Defendants' ward in San Diego, California. As part of his involvement in the Church, Plaintiff attended bible studies each week in one of the classrooms at Defendants' meetinghouse. Leading these meetings was the ward's "Bishop," Perpetrator Smith. Given that he regularly participated in the weekly bible study, Plaintiff

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

was familiar with Perpetrator Smith being the highest religious authority within the congregation. As such, Plaintiff agreed when Perpetrator Smith recommended the two of them begin private tutoring lessons after regular bible study meetings concluded. Under the pretense of these private lessons, Perpetrator Smith led Plaintiff by the other members of the congregation in attendance for the bible study, and to a separate classroom where he would have unsupervised access to Plaintiff. During the initial meetings, Perpetrator Smith would touch the Plaintiff. In subsequent incidents, Perpetrator Smith became more aggressive in his contact with Plaintiff, eventually proceeding to fondle Plaintiff's genitals over his clothing. The abuse continued to escalate, wherein Perpetrator Smith forced Plaintiff to fondle his nude genitals. Perpetrator Smith then introduced oral intercourse, which he would force Plaintiff to perform. Thereafter, Perpetrator Smith began anally raping Plaintiff. The abuse had progressed quickly, as Perpetrator Smith would bring Plaintiff to a separate classroom for his assaults on a biweekly basis. Plaintiff, still a child, believed he had no choice but to obey Perpetrator Smith given his absolute authority as "Bishop." Making matters worse, Perpetrator Smith psychologically manipulated Plaintiff, telling him that if he kept quiet, he would go to Heaven, but if he told of the abuse, he would go to Hell. As a result, the sexual abuse was allowed to continue uninterrupted for a full year. After suffering through a full year of extreme sexual abuse, Plaintiff at one point in 2016 refused Perpetrator Smith's demands and stopped attending Defendants' Church. Despite the alarming nature of Perpetrator Smith's interactions with Plaintiff, and clear indications of sexual abuse, Defendants continuously turned a blind eye toward their "Bishop's" misconduct. Their repeated decision to do so has caused Plaintiff severe and ongoing pain and suffering still present to this day.

32.     Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by The Church of Jesus Christ of Latter-day Saints. Membership records are the Church's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are

adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to the Church.

33.     Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds."*** All annotations placed on a member's record are approved by the First Presidency.

34.     Defendants maintain a pattern and practice of concealing abuse from the authorities, and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

35.     The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse."  In conjunction with this doctrine, Utah's Supreme Court has characterized the Helpline as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'"[5]

36.     In reality, the Church primarily staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah.  Rather than notifying law enforcement or other government authorities when Bishops and other Church clergy members call the Helpline

_____

[5] MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

1  regarding sexual abuse within the Church, Helpline operators transfer these calls to the Kirton

2  McConkie attorneys, who advise the bishop not to report the abuse incident to law enforcement,

3  misrepresenting clergy-penitent privilege laws as their reasoning.

4      37.    Defendants' policies and protocols further direct teachers and other mandated

5  reporters who suspect a minor may report abuse to them to encourage the minor to instead speak

6  with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

7      38.    In another sexual abuse-related civil lawsuit against the Church and its agents, a

8  Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information

9  gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[6]

10     39.    In other words, the Church implements the Helpline not for the protection and

11 spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for

12 Kirton McConkie attorneys to snuff out complaints and protect the Church and its wards from

13 potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M.

14 Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities

15 asking for information on abuse.

16     40.    Defendants' actions embody a culture that protects sexual predators, rather than

17 innocent and vulnerable children. Defendants handled the repeated allegations internally as a

18 "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops,

19 and personnel, allowed Perpetrator Smith to continue completely unhindered and protected, even in

20 his predatory conduct. Defendants, their agents, and employees, including bishops, counselors, or

21 personnel mentioned herein, DOES 4- 100, and each of them, acted to protect the heinous and

22 unforgiveable acts of Perpetrator Smith, and in such action taken against Plaintiff's innocence and

23 vulnerabilities, were careless, reckless, negligent, consciously disregarding a minor's rights.

24     41.    At all times herein mentioned, Defendants and each of them (1) knew how conducive

25 the Church premises were to sexual abuse and sexual predators, and that sexual predators, such as

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

---

[6] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter.

Perpetrator Smith in particular, had apparent, if not actual, authority within the Church community and on Church premises while 'acting', either literally and/or figuratively, as members of a priesthood (i.e., bishops, counsellors, elders, etc.) serving an important calling (i.e. Temple Worker); (2) knew that members of the Church priesthood and specifically, Perpetrator Smith, systematically and continuously leveraged any and all authority which the title and association with the Church, conceivably provided Defendant within the community, over followers of their faith, which at all relevant times herein included Plaintiff; and (3) knew that leaving Plaintiff or any youth members, prospective members, or attendees of the Church under the supervision of Perpetrator Smith or within his presence and otherwise unattended, presented a risk of imminent harm to those youth members, prospective members, and attendees, and did harm at least one of them, this Plaintiff.

42.    Defendants provided direct access to a large youth community wherein a danger to the community, Perpetrator Smith, wielded power over the Plaintiff.

43.    Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that Perpetrator Smith was isolating and taking minor children, including Plaintiff, and committing inappropriate behavior with minor children. Therefore, Defendants knew or should have suspected that Perpetrator Smith was engaging in inappropriate behavior and conduct with minor children, including Plaintiff, at DOE 1's ward and congregation and failed to take any remedial action prior to his sexual assault of Plaintiff.

44.    Prior to, during, and after Perpetrator Smith's sexual assault and/or sexual abuse, and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that Perpetrator Smith's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

45.    Notwithstanding their knowledge of Perpetrator Smith's sexual assault and/or sexual abuse, and molestation of Plaintiff and any other minor children, Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation,  or any other persons of the possible risk of further childhood sexual abuse by Perpetrator Smith, limit

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

or supervise his access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiff.

46.     Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff by their Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by Perpetrator Smith.

47.     As a direct result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report Perpetrator Smith's unlawful and inappropriate misconduct, Perpetrator Smith was able to continue his sexual assaults and/or sexual abuse, and molestation of Plaintiff.

48.     Defendants acting through their representative, agents and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by Perpetrator Smith because, inter alia, Defendants:

a)  Negligently hired, supervised, retained, monitored, and/or investigated Perpetrator Smith.

b)  Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

c)  Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law enforcement.

49.     Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made Perpetrator Smith's conduct harder to detect including, but not limited to:

a)  Permitting Perpetrator Smith to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator Smith sexually abused and/or sexually assaulted, and molested minor children, including Plaintiff.

b) Permitting Perpetrator Smith continued and/or unsupervised access to Plaintiff, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Perpetrator Smith's misconduct that created a risk of childhood sexual assault.

c) Failing to inform or concealing from law enforcement officials of the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrator Smith had, and/or was, engaged in the sexual assault of Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

d) Holding out and affirming Perpetrator Smith to Plaintiff and Plaintiff's parent, other children and their parents, and to the community as being in good standing and trustworthy.

e) Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, including Perpetrator Smith with minor children.

f) Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

50.    Defendants, and each of them, negligently, intentionally, maliciously and/or willfully refused to, and/or did not act reasonably to stop, inhibit, and/or report Perpetrator Smith to law enforcement prior to, during, and/or after their sexual assault and/or sexual abuse, and molestation of Plaintiff, thereby allowing the assault to occur and to continue unabated.

51.    Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

52.     Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

53.     The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

### (Plaintiff Against All Defendants and DOES 4-100)

54.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

55.     Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to the minor's parent or had a duty to control the conduct of Perpetrator Smith by way of the special relationship existing between those individuals.

56.     Defendants knew or should have known of Perpetrator Smith's misconduct and inappropriate sexual behavior directed by Perpetrator Smith to minor Plaintiff John Roe JS 6.

57.     Despite having knowledge of the misconduct, Defendants failed to take any preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff John Roe JS 6 or his parents regarding the abuse, despite having a legal duty to do so.

58.     As a result of Defendants' negligence, Plaintiff John Roe JS 6 was sexually abused by Perpetrator Smith.

59.     Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the special relationship had with minor Plaintiff, he would not have been subjected to the misconduct aimed against him.

60.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION
### NEGLIGENT SUPERVISION OF A MINOR
### (Plaintiff Against All Defendants and DOES 4-100)

61.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

62.     Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, Perpetrator Smith, on Defendants' premises. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor and protect Plaintiff from known and knowable dangers; like Perpetrator Smith, a figure of authority for the Defendants' church community shared with Plaintiff.

63.     Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that Perpetrator Smith was engaged in repeated inappropriate and harassing relationships with Plaintiff and may have exhibited inappropriate conduct around other minors; allowing Plaintiff to spend unsupervised one-on-one time with Perpetrator Smith; ignoring and turning a blind-eye to Plaintiff's whereabouts and wellbeing, so that he could be with Perpetrator Smith; and allowing Perpetrator Smith to repeatedly sexually harass and abuse the minor Plaintiff on the Church premises.

64.     Had Defendants adequately and properly supervised, monitored, and protected its students, Plaintiff would not have been harmed.

65.     Defendants also recklessly and negligently failed to implement and/or enforce

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

66. Had Defendants, each of them, adequately performed their duty and responsibility, then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment he endured, and which still impacts his life today, as alleged herein.

67. As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

<u>**THIRD CAUSE OF ACTION**</u>

**SEXUAL ABUSE OF A MINOR**

**(Plaintiff Against All Defendants and DOES 4-100)**

68. Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

69. While Plaintiff was a prospective member and attendee of Defendants' Church, Perpetrator Smith took advantage of his position of authority and trust to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to the acts given his age.

70. Defendants ratified Perpetrator Smith's sexual abuse of Plaintiff because Defendants had knowledge that he had harassed and potentially harmed Plaintiff, in addition to any other community youth members, yet they intentionally turned a blind-eye and still allowed him to be in a position of power and authority and did nothing to prevent any further abuse from occurring, thus allowing Perpetrator Smith to gain access to and ultimately manipulate and sexually abuse Plaintiff. Defendants did not discipline, denounce, or discharge Perpetrator Smith; as such, they instead accepted and thus ratified his conduct.

71. At all times, Defendants, were employees or administrators who were acting within the course and scope of their employment or agency with The Church of Jesus Christ of Latter-day

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Saints when they ratified Perpetrator Smith's criminal conduct and adopted it as if it were their own conduct.

72.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

73.    In committing the acts described herein, the conduct of Perpetrator Smith, Defendants, their agents, and employees, and DOES 4-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, The Church, The Temple Corporation and The San Diego California South Stake.

## FOURTH CAUSE OF ACTION

### NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE
### (Plaintiff Against All Defendants and DOES 4-100)

74.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

75.    Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 4-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

76.    During the time Plaintiff was being sexually abused by Perpetrator Smith, Defendants knew or should have known of any complaints of serious misconduct made against Perpetrator Smith, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Perpetrator Smith.

77.    Instead, Defendants blamed, threatened, and attacked Plaintiff for compromising

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Perpetrator Smith's position in the Church and authority within the Church community. By failing to prevent or intervene in the sexual abuse over the course of a full year, Defendants made clear to Plaintiff that they were willing to allow the extreme misconduct to continue rather than jeopardize Perpetrator Smith's authority as "Bishop." Abandoning Plaintiff to this fate was more damaging than any verbal threat or attack Defendants could have deployed. Plaintiff still suffers from the psychological and emotional impacts of Defendants' actions today.

78.    Defendants knew or should have known that Perpetrator Smith engaged in repeated misconduct against male members, prospective members, and attendees of the community, one being Plaintiff.

79.    Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise Perpetrator Smith on Defendants' premises.

80.    Had Defendants, each of them, properly investigated, supervised, trained, and monitored Perpetrator Smith's conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed Perpetrator Smith to continue, unhindered, with his predatory conduct directed towards underage members, prospective members, and attendees of the Church community, including Plaintiff.

81.    Defendants negligently hired, supervised, retained, monitored, and otherwise employed Perpetrator Smith and negligently failed to ensure the safety of a minor prospective community member and regular attendee of the Church, Plaintiff, who was entrusted to Defendants' custody, care and control.

82.    Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including the Perpetrator Smith.

83.    Had Defendants, each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their 'Bishops' and other agents, Plaintiff would not have

19

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

been subjected to sexual abuse and other harmful conduct inflicted upon him.

84.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## FIFTH CAUSE OF ACTION

### NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE

### (Plaintiff Against All Defendants and DOES 4-100)

85.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

86.    Defendants, their agents and employees, each of them, had a duty to warn, train and educate their youth community in its custody, including Plaintiff, on known and knowable dangers posed by its faculty and staff. Defendants, their agents, and employees, and DOES 4-100, also had a duty to warn, train and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing within the youth community.

87.    Defendants, their employees and/or agents, each of them, breached their duty to Plaintiff by failing to warn him of known and knowable dangers posed by its faculty and staff, including Perpetrator Smith; by failing to inform and educate him on its sexual harassment policies and the methods to identify, report, and respond to inappropriate sexual harassment by members of the priesthood; and by failing to train its faculty and staff, including Perpetrator Smith, on Defendants' sexual harassment policies.

88.    As a direct and legal result of the negligence of Defendants, their employees and/or agents, and DOES 4-100, Plaintiff was groomed, manipulated, and ultimately sexually assaulted and abused by Perpetrator Smith.

89.    Had Defendants, their employees and/or agents, fulfilled their duties and responsibilities, Plaintiff would not have been injured and damaged.

90.    As a direct and legal result of this negligent conduct, Plaintiff suffered severe and

permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SIXTH CAUSE OF ACTION

### BREACH OF MANDATORY DUTY:

### FAILURE TO REPORT SUSPECTED CHILD ABUSE

**(Plaintiff Against All Defendants and DOES 4-100)**

91.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

92.     Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

93.     Defendants, acting through their employees, had, or should have had a reasonable suspicion that Perpetrator Smith was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

94.     Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

95.     By failing to report suspected child abuse, Defendants allowed Perpetrator Smith to continue, unhindered, in his abuse of minor children, including Plaintiff.

96.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

21

ascertained, but which exceed the minimum jurisdictional limits of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Roe JS 6 prays for judgment against Defendants THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; TEMPLE CORPORATION OF THE CHURCH OF JESUS CHRIST OF LATTER-DAY SAINTS; THE SAN DIEGO CALIFORNIA SOUTH STAKE, their employees and/or agents, and DOES 4 through 100, and each of them, as follows:

1. For an award of special (economic) and general (non-economic) damages according to proof;

2. Attorney's fees;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.

Dated: September 4, 2024                  **SLATER SLATER SCHULMAN LLP**

By: _____

Michael W. Carney
Lauren A. Welling
Sarah Kissel Meier
Attorneys for Plaintiff

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel: (310) 341-2086 | Fax: (310) 773-5573