# EXHIBIT 2

Michael W. Carney, State Bar No. 241564
Lauren A. Welling, State Bar No. 291813
Sarah Kissel Meier, State Bar No. 305315
**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Telephone: (310) 341-2086
Fax: (310) 773-5573
E-mail: *MCarney@sssfirm.com*
          *LWelling@sssfirm.com*
          *Skmeier@sssfirm.com*

Attorneys for Plaintiff

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
  8/26/2024 3:37:36 PM

  Clerk of the Superior Court
By M. Estrada          ,Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

The Estate of Jane Roe DM 101, by and through its Successor-in-Interest, Bailey Chaudhry;

Plaintiff,

v.

DOE 1, a corporation; DOE 2, a corporation; DOE 3, an entity of unknown form; and DOES 4 to 100,

Inclusive,

Defendants.

Case No.:     24CU008126C

**COMPLAINT FOR SURVIVAL ACTION DAMAGES SOUNDING IN THE FOLLOWING CAUSES OF ACTION:**

1. **NEGLIGENCE**
2. **NEGLIGENT SUPERVISION OF A MINOR**
3. **SEXUAL ABUSE OF A MINOR**
4. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION**
5. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE DECEDENT**
6. **BREACH OF MANDATORY DUTY**

**[DEMAND FOR JURY TRIAL]**

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

The Estate of Jane Roe DM 101, by and through its successor-in-interest, Bailey Chaudhry, of and for her causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1. This case involves egregious sexual and emotional abuse of a child.

2. For 9 years between 1961 and 1970, Decedent Jane Roe DM 101 suffered unspeakably graphic and inhumane sexual, physical, and psychological abuse at the hands of two of Defendants' religious authorities and "teachers" within the congregation. The abuse was allowed to continue several times each week, across various locations, including Defendants' property, and left Decedent Jane Roe DM 101 with physical and emotional injuries so great, and scarring so deep, that words cannot appropriately describe the heartbreaking impacts she endured.

## PARTIES

3. At all relevant times, the Estate of Jane Roe DM 101, by and through its successor-in-interest, Bailey Chaudhry, was a resident of the County of San Diego, State of California and the State of Nevada.

4. Plaintiff the Estate of Jane Roe DM 101, by and through its successor-in-interest, Bailey Chaudhry (hereinafter "Plaintiff"), child of the Decedent Jane Roe DM 101, and as such, Bailey Chaudhry is decedent's successor-in-interest pursuant to *Code of Civil Procedure* §377.1 Plaintiff Bailey Chaudhry has executed and filed with this Complaint a declaration of successor-in-interest under penalty of perjury pursuant to *Code of Civil Procedure* §377.32. Plaintiff the Estate of Jane Roe DM 101, by and through its successor-in-interest, Bailey Chaudhry seeks survival action damages pursuant to *Code of Civil Procedure* §377.30 and §377.34 which provides that the damages recoverable under the survival action include the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived.

5. Decedent Jane Roe DM 101 ("**Decedent**") was a victim of childhood sexual assault, as defined by section 340.1 of the Code of Civil Procedure, the name "Jane Roe DM 101" is not the

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Decedent's actual name, but is a fictitious name utilized to protect her privacy. Jane Roe DM 101 is entitled to protect her identity in this public court filing by not disclosing her name. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) As a minor, Decedent was the victim of unlawful sexual assault, molestation, abuse, and other extreme misconduct by two Perpetrators, hereinafter referred to as "**Perpetrator Smith**" and "**Perpetrator Bob**," collectively, "**Perpetrators**."

6.      Decedent's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning her identity and making her identity public, as such a public disclosure would further harm Decedent and her family.

7.      Defendant DOE 1, is and was at all relevant times herein mentioned, the religious entity, located at San Diego, California, through which Perpetrators held and used their positions as "Home Teachers" and "Elders" to groom and sexually abuse Decedent. DOE 1 is a corporation duly organized and operating pursuant to the laws of the State of Utah. DOE 1 operates wards, meetinghouses, congregations, temples and other houses of worship within the State of California. DOE 1 does business with and conducts continuous and systemic activities in California. DOE 1's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.  DOE 1 is registered to do business in California, and the presiding Bishop serves at the pleasure of and subject to the direct and absolute control of DOE 1. The divisions of the CHURCH are the wards, stakes and areas. DOE 1 is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

8.      Defendant DOE 2 is and was at all relevant times herein mentioned, a religious entity and subsidiary of DOE 1. DOE 2 is a corporation duly organized, and operating pursuant to the laws of, the State of Utah. DOE 2 operates properties, temples and other houses of worship within the State of California. DOE 2 does business with and conducts continuous and systemic activities in California. DOE 2's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.  DOE 2 is registered to do business in California, and operates, maintains and manages DOE 1's properties at the direction of and under the control of DOE 1. Doe 2, is independently liable for its own

**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

9.    Defendant DOE 3, is and was at all relevant times herein mentioned, a religious entity and subsidiary of DOE 1. DOE 3 is a religious entity of unknown form duly organized, and operating pursuant to the laws of, the State of California. DOE 3 does business with and conducts continuous and systemic activities in California. DOE 3's principal place of business is 1590 East H Street, Chula Vista, CA 91913. DOE 3 is registered to do business in California, and operates, maintains and manages DOE 1's congregations and wards within San Diego County at the direction of and under the control of DOE 1. DOE 3 has, or as alleged herein had, responsibility for some or all operations in San Diego County, California. DOE 3 reports directly to DOE 1. DOE 3, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

10.    The Defendants each assumed responsibility for the wellbeing of their members, whether as clergy or volunteers appointed by DOE 1. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday School and Primary School teacher; Defendants and their agents placed individuals in positions of responsibility and authority over Church members. As a result, they each had a special relationship with members of the congregation, including the minor Decedent. This relationship gave rise to a duty to protect members of the congregation, including the minor Decedent from a foreseeable risk of harm. At all relevant times, the Defendants assumed special responsibilities towards its members including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members from the harm they might inflict.

11.    Defendants' income comes from member tithes which are turned over to DOE 1 for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes and areas. DOE 1 does not provide information about their finances to their members or the public. Upon information and belief, DOE 1 receives more than seven (7) billion dollars a

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

year in tithing from members. Upon information reported publicly in the media, DOE 1 owns financial assets and real estate in excess of 200 billion dollars.

12.     The true names and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 4 through 100, inclusive, are unknown to Decedent at this time, who, therefore, sues said Defendants by such fictitious names. Decedent is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal cause of the injury to Decedent and the resulting injury and damages to Decedent as hereinafter alleged. Decedent will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

13.     Decedent is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and every Defendant as an agent, employee, successor-in-interest and/or joint venture.

14.     All of the acts, conduct and nonfeasance herein carried out by each and every representative, employee or agent of each and every corporate business Defendant, was authorized, ordered and directed by their respective Defendant's corporate or business employers, officers, directors and/or managing agents; that in addition thereto, said corporate or business employers, officers, directors and/or managing agents had advance knowledge of, authorized and participated in the herein described acts, conduct and nonfeasance of their representatives, employees, agents and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and approved of each and all said acts, conduct or nonfeasance of their co employees, employees and

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

agents.

15.　　This is an action for childhood sexual abuse brought pursuant to Code of Civil Procedure section 340.1, subdivision (a)-(d) and any other applicable statute. Prior to the December 31, 2022 filing deadline, Decedent and DOE 1 entered into a tolling agreement that extended the time to file until August 26, 2024. The misconduct described herein began in 1961 when Decedent Jane Roe DM 101 was a minor, 3 years old. At the time of her death, Decedent was over the age of forty.

16.　　Moreover, as stated herein and at all times relevant, Defendants, each of them, and DOES 4 through 100, knew or had reason to know, or were otherwise on notice, of the misconduct alleged herein, which created the risk of childhood sexual assault by an employee, volunteer, representative, or agent, and the person or entity failed to take reasonable steps or to implement reasonable safeguards to avoid acts of childhood sexual assault. For purposes of subdivision (c), providing or requiring counseling is not sufficient, in and of itself, to constitute a reasonable step or reasonable safeguard. As such, Plaintiff's complaint is timely.

17.　　Perpetrators were each an employee, agent, servant, member, and/or volunteer of Defendants when they sexually assaulted the Decedent—then a minor.

18.　　During the period of childhood sexual assault and/or abuse of Decedent, Defendants supervised and exercised control over Decedent's abuser.

19.　　Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Decedent as hereinafter alleged.

20.　　Except as otherwise noted, a reference to "Defendants" in this Complaint shall include DOE 1, DOE 2, DOE 3, and DOES 4 through 100, inclusive.

## JURISDICTION AND VENUE

21.　　This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of San Diego and the State of California.

22.　　The subject incidents upon which this Complaint are based occurred in the City of

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

San Diego, within the County of San Diego, in the State of California. As such, venue is proper in the San Diego Superior Court of California.

## FACTUAL ALLEGATIONS
### (Common to All Causes of Action)

23.     DOE 1 is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

24.     The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

25.     Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California. [2]

26.     The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

27.     Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

28.     Bishops, appointed and overseen by the Stake President, are responsible for the

---

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng

[2] [DOE 1] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

[3] [DOE 1] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

29.    Decedent Jane Roe DM 101 was a minor child and a member of Defendants' Church, in San Diego, California.  Perpetrators were "Home Teachers" and "Elders" of DOE 1 and used their positions of authority therein to groom and to sexually abuse Decedent. Abuse by Perpetrators began when Decedent was just 3 years old. Intent on manipulating Decedent's emotions and taking advantage of her innocence, so that they eventually could sexually abuse her, Perpetrators exploited Decedent's fragile mental state to cause her extreme fear, anxiety, and confusion; coercing and manipulating Decedent in order to gain further power and control over her. All tactics employed for abuse purposes occurred during the most vulnerable time of Decedent's life.

30.    Eventually, Perpetrators initiated extreme sexual abuse of Decedent. Decedent endured ongoing, humiliating events of child molestation by Perpetrators, each a figure of religious authority, whom Decedent had been taught to trust with her life and well-being and had never been given the choice but to trust.

31.    Plaintiff is informed and believes and thereupon alleges, that, at all times herein mentioned, Defendants knew Perpetrators were using their positions of authority within the Defendants' Church to groom and to sexually abuse one of its minor members, Decedent, and Defendants failed to take reasonable steps to protect her.

32.    Perpetrators engaged in fondling, oral copulation, digital penetration of the vagina and anus, anal and vaginal rape, and penetration using a foreign object of Decedent at various locations, including at Defendants' controlled events and meetings and on Defendants' properties.

33.    From 1961 to 1970, the abuse took place within the chapel, kitchen, men's bathroom, and breastfeeding room on Defendants' premises. It also took place in Perpetrator Smith's car to and from Defendants' Church, at a nearby park, in Perpetrator Bob's vehicle, and in Perpetrators' home.

---

[4] [DOE 1] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

34.    Prior to the first instance of abuse in 1961 and at all times thereafter, Defendants, bishops and/or counselors knew, should have known, reasonably suspected, or were otherwise on notice of the ongoing verbal, physical and sexual abuse by Perpetrators. Even initial interactions between Perpetrator Smith, Decedent, and her younger sister made clear that Perpetrator Smith's conduct toward the minor girls was inappropriate. Perpetrator Smith would bounce Decedent and her sister up on down on his lap in the car outside the meetinghouse. At times, at least one of the children would be crying, the full uncomfortable routine regularly on display through the clear windows of Perpetrator Smith's vehicle. Decedent and her sister were not allowed to wear underwear when attending Church functions with Perpetrator Smith. Beyond the fact that this made the actions previously described all the more abhorrent, this detail was critical in two additional regards. The first is that soon after the abuse began, Decedent was being violently penetrated, anally and vaginally, to an extent that was causing extreme physical injury and heavy, continuous bleeding. Because she was not permitted by Perpetrator Smith to wear underwear, Decedent often bled out on the Church pews themselves. Perpetrator Smith, not fearing a thing, would simply wipe up the blood left under Decedent's rear and genital area, surely confident that Defendants and their members would simply turn the other cheek as they continued to do outside the meetinghouse when observing Perpetrator Smith thrusting Decedent in his lap.

35.    In 1962, the knowledge Defendants had or should have had before the sexual, physical, and psychological abuse became actual, confirmable knowledge by way of two separate disclosures made by Decedent and her sister. Perpetrator Smith's rule about no underwear for Decedent and her sister was again critical as Decedent's sister, in disclosing the abuse, courageously crawled under the Church pews during a religious service all the way to the front of the service, and the "Bishop's" pew. Thus, the 3-year-old girl, with the 4-year-old-Decedent watching on, crawled by any number of Defendants' other adult members, likely at least partially exposed, finally telling the "Bishop" that Perpetrator Smith has been hurting them. Decedent herself disclosed that same year, telling a "Primary" teacher in terms unmistakable in their meaning, that Perpetrator Smith had been fondling and penetrating her. Regardless, the vile sexual misconduct by Perpetrator Smith and

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Perpetrator Bob was allowed to continue. Defendants, with knowledge of the abuse, permitted Perpetrators to continue "home teaching" Decedent, knowing Perpetrators chose to visit Decedent and her sister when they were home alone. They provided Perpetrator Smith any variety of rooms on their property to molest and rape Decedent. And against all reason, despite the litany of legal obligations already shirked, they stood by as Perpetrators repeatedly took Decedent and her sister into their home over a period of approximately 9 years. Defendants not only had notice of the horrific abuse Decedent endured, they all but aided and abetted it.

36.    Decedent was in a difficult place in life for a 3-year-old girl by 1961, and it was the Defendants' Church which was hoped to be a safe harbor in the coming years. Decedent being in such a vulnerable position, her mother institutionalized and her father away with the military, the family's trust was put in Defendants' faith. As part of the Church-familiarizing process, Perpetrator Smith and Perpetrator Bob began visiting Decedent and her sister for "home teaching." Over the years, these "home visits" would take place at Perpetrators' home. The car rides in each of Perpetrators' vehicles would be to religious services, "Primary" religious classes, or to other locations off Church grounds, but technically related to "home teaching." During these early car rides, Perpetrator Smith instructed Decedent not to wear underwear to Church. He would then bounce her on his lap in the car, very uncomfortable for Decedent given Perpetrator Smith's erection. By the following year, Perpetrators' actions toward Decedent evolved into the unthinkable. Perpetrator Smith's fondling of Decedent moved from during sacrament and in his vehicle to other rooms of the Church, and at a nearby park as well. Also in these rooms, Perpetrator Smith began digitally penetrating Decedent's vagina and anus, utilizing additional digits as Decedent got older. Still unable to break Decedent, who at this point had already shown courage and resolve possessed by incredibly few, Perpetrator Smith continued. He anally and vaginally raped Decedent, approximately 300 to 400 times each. More twisted, he showed Perpetrator Bob how to do the same, leading Perpetrator Bob to rape Decedent over 100 times himself. Some of this abuse took place while Decedent's mother was repeatedly institutionalized, as Perpetrator Smith resolved to have Decedent and her sister stay with him and Perpetrator Bob, only to see Decedent's mother leave the

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

facility before going back in, the cycle repeating once more. In what should be beyond words, Perpetrator Smith also utilized a circular foreign object to penetrate Decedent in an effort to make his own sexual assault easier for himself. It should not be forgotten that all of this was done after Defendants were told that Perpetrator Smith had been harming and raping Decedent and her sister.

37.    Defendants' actions made this sexual abuse possible, as they did with the psychological abuse which accompanied it. Perpetrator Smith would keep food with him in the bathroom as he urinated or masturbated. Having starved Decedent and her sister, when they would open the door, he instructed them to eat the food off his penis, their "reward" for good behavior. If they cried during the sexual abuse, or at any other time under his care, food was withheld. On one occasion, Perpetrator Smith and Perpetrator Bob each performed oral sex on Decedent at the same time, one of the many instances of abuse so disturbing in nature that it stands out. Likewise with the countless instances of rape in Perpetrators' showers. Altogether, Decedent was physically, sexually, and psychologically assaulted in all the aforementioned ways at least several times a week, though she and her sister had reported the abuse from nearly its outset. Even after Decedent moved from a San Diego ward to the Santee ward, Perpetrators nonetheless came to visit Decedent, picking her up and leading her away to be abused. It was not until she was 12 years old in 1970 when Decedent confronted her parents, not for the first time, about the abuse that her father beat her to the point she needed a full body cast to heal. Decedent ran away from home, finally bringing the abuse to an end. Having been through more as a 12-year-old than most in a lifetime, and having been ignored or beaten when finally speaking up for herself, Decedent nonetheless persisted.

38.    Decedent's true will to live cannot be appropriately understood until one realizes the depth and weight of what Defendants took from her through their conduct in 1961 and beyond. Decedent, due to the extreme and depraved nature of the penetration she endured, suffered a tear from her anus to her vagina. This left Decedent bleeding profusely on a regular basis and wearing diapers into her middle school years due to incontinence. The physical pain was excruciating, as was the bullying and embarrassment. All aspects of Decedent's childhood had been altered and impacted beyond recognition. The damage to Decedent's reproductive organs required over 600

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

stitches, a hysterectomy, and led to uterine prolapse, an incomplete cervix, and countless miscarriages. Decedent was forever made to feel unclean or unworthy, and after the dissolution of her marriage due to the impacts of the abuse, felt unlikely to find a fellow member to remarry because of what Defendants allowed to happen to her. Yet to find a partner outside the faith was equally reprehensible in the eyes of Defendants. Decedent was threatened by Defendants that they would take the children she did have, beginning a campaign of harassment.

39.    Each Stake creates and maintains meticulous sets of membership records which are reviewed and controlled by DOE 1. Membership records are DOE 1's way of tracking its members. Members are not allowed access to their records and must receive approval to view them under the supervision of the Bishop. These records include names, addresses, callings, and temple recommendations. The records also contain additional membership information such as new members, members in military service, members who are adopted, children who are born out of wedlock, and records of children of divorced parents. Records are created by the local Bishops, approved by the Stake President, and ultimately transmitted to DOE 1.

40.    Records with "annotations" are also maintained by Defendants. Annotations are made where a member's conduct has threatened the well-being of other persons or of the Church as a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective transexual operation, repeated homosexual activities (by adults), or embezzlement of church funds."*** All annotations placed on a member's record are approved by the First Presidency.

41.    Defendants maintain a pattern and practice of concealing abuse from the authorities, and signals that its members should conceal and/or fail to report abuse so as to keep "the Church from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter* (August 4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct, perpetuating a culture of concealment and encouraging a lack of cooperation among Church members with law enforcement.

42.    The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of

abuse, the first responsibility of the Church is to assist those who have been abused, and to protect those who may be vulnerable to future abuse."  In conjunction with this doctrine, Utah's Supreme Court has characterized the Helpline as "a 1-800 number that bishops and other Church clergy can call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'"[5]

43.     In reality, DOE 1 primarily staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah.  Rather than notifying law enforcement or other government authorities when Bishops and other Church clergy members call the Helpline regarding sexual abuse within the Church, Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the bishop not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

44.     Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

45.     In another sexual abuse-related civil lawsuit against the Church and its agents, a Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[6]

46.     In other words, DOE 1 implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for Kirton McConkie attorneys to snuff out complaints and protect DOE 1 and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for

---

[5] MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

[6] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

information on abuse.

47.    Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as a "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops, and personnel, allowed Perpetrators to continue completely unhindered and protected, even in his predatory conduct. Defendants, their agents, and employees, including bishops, counselors, or personnel mentioned herein, DOES 4- 100, and each of them, acted to protect the heinous and unforgiveable acts of Perpetrators, and in such action taken against Decedent's innocence and vulnerabilities, were careless, reckless, negligent, consciously disregarding a minor's rights.

48.    At all times herein mentioned, Defendants and each of them (1) knew how conducive the Church premises and other locations allowing for unsupervised access to youth members were to sexual abuse and sexual predators, and that sexual predators, such as Perpetrators in particular, had apparent, if not actual, authority within the Church community, on Church premises, and at the aforementioned unsupervised locations, while 'acting', either literally and/or figuratively, as members of a priesthood (i.e., bishops, counsellors, elders, etc.) serving an important calling (i.e. Temple Worker); (2) knew that members of the Church priesthood and specifically, Perpetrators, systematically and continuously leveraged any and all authority which the title and association with CHURCH, conceivably provided Defendant within the community, over followers of their faith, which at all relevant times herein included Decedent; and (3) knew that leaving Decedent or any youth members of the Church under the supervision of Perpetrators or within their presence and otherwise unattended, presented a risk of imminent harm to those youth members and did harm at least one of them, this Decedent.

49.    Defendants provided direct access to a large youth community wherein a danger to the community, Perpetrators, wielded power over the Decedent.

50.    Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that Perpetrators were isolating and taking minor children, including Decedent, and committing inappropriate behavior with minor

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

children. Therefore, Defendants knew or should have suspected that Perpetrators were conducting inappropriate behavior and conduct with minor children, including Decedent, at DOE 1's ward and congregation and failed to take any remedial action prior to their sexual assault of Decedent.

51.    Prior to, during, and after Perpetrators' sexual assault and/or sexual abuse, and molestation of Decedent, Defendants, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on notice, that Perpetrators' conduct and relationship with young children, including Decedent, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

52.    Defendants were made aware, and confirmed that Perpetrators had inappropriately touched, sexually assaulted and/or sexually abused, and molested other children, including Decedent.

53.    Notwithstanding their confirmed actual knowledge of Perpetrators' sexual assault and/or sexual abuse, and molestation of Decedent and other minor children, Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation,  or any other persons of the possible risk of further childhood sexual abuse by Perpetrators, limit or supervise their access to children, including Decedent, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Decedent.

54.    Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Decedent by their Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Decedent by Perpetrators.

55.    As a direct result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report Perpetrators' unlawful and inappropriate misconduct, Perpetrators were able to continue their sexual assaults and/or sexual abuse, and molestation of Decedent.

56.    Defendants acting through their representative, agents and employees, are liable to Decedent for harm from the sexual assault, abuse, and other misconduct committed by Perpetrators because, inter alia, Defendants:

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

---

a) Negligently hired, supervised, retained, monitored, and/or investigated Perpetrators.

b) Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

c) Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Decedent to law enforcement.

57.    Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made Perpetrators' conduct harder to detect including, but not limited to:

a) Permitting Perpetrators to remain in positions of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrators sexually abused and/or sexually assaulted, and molested minor children, including Decedent.

b) Permitting Perpetrators continued and/or unsupervised access to Decedent, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of Perpetrators' misconduct that created a risk of childhood sexual assault.

c) Failing to inform or concealing from law enforcement officials of the fact that Decedent and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that Perpetrators had, and/or were, engaged in the sexual assault of Decedent, thereby creating the circumstance where Decedent and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Decedent.

d) Holding out and affirming Perpetrators to Decedent and Decedent's parent, other children and their parents, and to the community as being in good standing and trustworthy.

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

e) Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, including Perpetrators with minor children.

f) Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Decedent.

58.    Defendants, and each of them, negligently, intentionally, maliciously and/or willfully refused to, and/or did not act reasonably to stop, inhibit, and/or report Perpetrators to law enforcement prior to, during, and/or after their sexual assault and/or sexual abuse, and molestation of Decedent, thereby allowing the assault to occur and to continue unabated.

59.    Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or refusal to satisfy their duties to Decedent was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

60.    Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

61.    The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Decedent.

## **FIRST CAUSE OF ACTION**

### **SURVIVAL ACTION SOUNDING IN NEGLIGENCE**

#### **(Plaintiff Against All Defendants and DOES 4-100)**

62.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

17

63.    Defendants are persons or entities who owed a duty of care to the Decedent and/or to the minor's parent or had a duty to control the conduct of the perpetrator by way of the special relationship existing between those individuals.

64.    Defendants knew or should have known of Perpetrators' misconduct and inappropriate sexual behavior directed by Perpetrators to minor Decedent Jane Roe DM 101.

65.    Despite having knowledge of the misconduct, Defendants failed to take any preventive action to control the conduct, failed to warn, report, and/or confront Decedent Jane Roe DM 101 or her parents regarding the abuse, despite having a legal duty to do so.

66.    As a result of Defendants' negligence, Decedent Jane Roe DM 101 was sexually abused by Perpetrators.

67.    Had said Defendants fulfilled their duties and responsibilities to Decedent in the special relationship had with minor Decedent, she would not have been subjected to the misconduct aimed against her.

68.    As a direct and legal result of this conduct, Decedent suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past costs of medical care and treatment, and past loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION
## SURVIVAL ACTION SOUNDING IN NEGLIGENT SUPERVISION OF A MINOR
### (Plaintiff Against All Defendants and DOES 4-100)

69.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

70.    Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Decedent, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Perpetrators, on Defendants' premises and other locations allowing for direct, unsupervised access to youth members of Defendants' Church. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor and protect Decedent from known and knowable dangers; like Perpetrators, each a figure of authority for the Defendants' church community shared with Decedent.

71.    Defendants breached their duty to properly and adequately supervise, monitor and protect Decedent by, in part, ignoring clear and obvious signs that Perpetrators were engaged in repeated inappropriate and harassing relationships with Decedent and exhibited inappropriate conduct around other minors; allowing Decedent to spend unsupervised one-on-one time with Perpetrators; ignoring and turning a blind-eye to Decedent's whereabouts and wellbeing, so that she could be with Perpetrators; and allowing Perpetrators to repeatedly sexually harass and abuse the minor Decedent on the Church premises, during Church activities including "home teaching," and at the aforementioned unsupervised locations.

72.    Had Defendants adequately and properly supervised, monitored, and protected its students, Decedent would not have been harmed.

73.    Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

74.    Had Defendants, each of them, adequately performed their duty and responsibility, then Decedent would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment she endured, as alleged herein.

75.    As a direct and legal result of this conduct, Decedent suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION

### SURVIVAL ACTION SOUNDING IN SEXUAL ABUSE OF A MINOR

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

**(Plaintiff Against All Defendants and DOES 4-100)**

76.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

77.    While Decedent was a member at Defendants' Church, Perpetrators took advantage of their positions of authority and trust to engage in unlawful sexual acts and other harmful misconduct with Decedent. Decedent did not consent to the acts, nor could Decedent have consented to the acts given her age.

78.    Defendants ratified Perpetrators' sexual abuse of Decedent because Defendants had knowledge that he had harassed and potentially harmed other community youth members, yet they intentionally turned a blind-eye and still allowed him to be in a position of power and authority and did nothing to prevent any further abuse from occurring, thus allowing Perpetrators to gain access to and ultimately manipulate and sexually abuse Decedent. Defendants did not discipline, denounce, or discharge Perpetrators; as such, they instead accepted and thus ratified his conduct.

79.    At all times, Defendants, were employees or administrators who were acting within the course and scope of their employment or agency with DOE 1 when they ratified Perpetrators' criminal conduct and adopted it as if it were their own conduct.

80.    As a direct and legal result of this conduct, Decedent suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past costs of medical care and treatment, and past loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

81.    In committing the acts described herein, the conduct of Perpetrators, Defendants, their agents, and employees, and DOES 4-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, DOE 1, DOE 2 and DOE 3.

**FOURTH CAUSE OF ACTION**

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

**SURVIVAL ACTION SOUNDING IN NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE**

**(Plaintiff Against All Defendants and DOES 4-100)**

82.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

83.     Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 4-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

84.     During the time Decedent was being sexually abused by Perpetrators, Defendants knew or should have known of any additional complaints of serious misconduct made against Perpetrators, including that of Decedent's sister, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against Perpetrators.

85.     Instead, Defendants blamed, threatened, and attacked Decedent for compromising Perpetrators' positions in the Church and authority within the Church community. Defendants simply discarded Decedent, even after the sexual abuse quickly became obvious and Decedent and her sister had disclosed the severe abuse to Defendants. The one institution in Decedent's life that should not, and legally could not, simply disregard her did exactly that. For the rest of her life, Decedent had to hear incessantly, at every turn, how Perpetrator Smith was a good man. This blanket statement seemed to become Defendants' catchphrase to simply shrug Decedent off. That Defendants could handle Decedent during and after the abuse in the manner they did, despite the catastrophic physical, sexual, emotional, and psychological impacts they inflicted, cannot be taken as anything short of a complete affront to Decedent's dignity and humanity. However, because Defendants had Perpetrator Smith and his son Perpetrator Bob's reputations to uphold, their leaders' predatory and deranged conduct toward the minor Decedent would have to be left uninterrupted for however long the abuse continued.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

86.     Defendants knew or should have known that Perpetrators engaged in repeated misconduct against female members of the community, one being Decedent.

87.     Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise Perpetrators on Defendants' premises.

88.     Had Defendants, each of them, properly investigated, supervised, trained, and monitored Perpetrators' conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed Perpetrators to continue, unhindered, with their predatory conduct directed towards underage members of the Church community, including Decedent.

89.     Defendants negligently hired, supervised, retained, monitored, and otherwise employed Perpetrators and negligently failed to ensure the safety of a minor community member in the Church, Decedent, who was entrusted to Defendants' custody, care and control.

90.     Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including the Perpetrators.

91.     Had Defendants, each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their 'Elders, ' 'Home Teachers,' and other agents, Decedent would not have been subjected to sexual abuse and other harmful conduct inflicted upon her.

92.     As a direct and legal result of this conduct, Decedent suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past costs of medical care and treatment, and past loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## FIFTH CAUSE OF ACTION

### SURVIVAL ACTION SOUNDING IN NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE

### (Plaintiff Against All Defendants and DOES 4-100)

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

93.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

94.     Defendants, their agents and employees, each of them, had a duty to warn, train and educate their youth community in its custody, including Decedent, on known and knowable dangers posed by its faculty and staff. Defendants, their agents, and employees, and DOES 4-100, also had a duty to warn, train and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing within the youth community.

95.     Defendants, their employees and/or agents, each of them, breached their duty to Decedent by failing to warn her of known and knowable dangers posed by its faculty and staff, including Perpetrators; by failing to inform and educate her on its sexual harassment policies and the methods to identify, report, and respond to inappropriate sexual harassment by members of the priesthood; and by failing to train its faculty and staff, including Perpetrators, on Defendants' sexual harassment policies.

96.     As a direct and legal result of the negligence of Defendants, their employees and/or agents, and DOES 4-100, Decedent was groomed, manipulated, and ultimately sexually assaulted and abused by Perpetrators.

97.     Had Defendants, their employees and/or agents, fulfilled their duties and responsibilities, Decedent would not have been injured and damaged.

98.     As a direct and legal result of this negligent conduct, Decedent suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past costs of medical care and treatment, and past loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### SIXTH CAUSE OF ACTION

**SURVIVAL ACTION SOUNDING IN BREACH OF MANDATORY DUTY:**

**FAILURE TO REPORT SUSPECTED CHILD ABUSE**

**(Plaintiff Against All Defendants and DOES 4-100)**

99.     Plaintiff re-alleges and incorporates by reference herein each allegation contained

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

herein above as though fully set forth and brought in this cause of action.

100. Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

101. Defendants, acting through their employees, had, or should have had a reasonable suspicion that Perpetrators was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

102. Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

103. By failing to report suspected child abuse, Defendants allowed Perpetrators to continue, unhindered, in their abuse of minor children, including Decedent.

104. As a direct and legal result of this conduct, Decedent suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the Estate if Jane Roe DM 101 by and through its successor-in-interest, Bailey Chaudhry, prays for judgment against Defendants DOE 1, DOE 2, DOE 3, their employees and/or agents, and DOES 4 through 100, and each of them, for survival action damages as follows:

1. For an award of special (economic) and general (non-economic) damages according to proof;

2.  Attorney's fees;

3.  For costs of suit incurred herein; and

4.  For such other and further relief as the Court deems just and proper.

## **JURY DEMAND**

Decedent demands a trial by jury on all causes of action which may be tried by a jury.

Dated:  August 26, 2024                    **SLATER SLATER SCHULMAN LLP**


By: _____
    Michael W. Carney
    Lauren A. Welling
    Sarah Kissel Meier
    Attorneys for Decedent

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573