# EXHIBIT 3

Michael W. Carney, State Bar No. 241564
Lauren A. Welling, State Bar No. 291813
Sarah Kissel Meier, State Bar No. 305315
**SLATER SLATER SCHULMAN LLP**
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Telephone: (310) 341-2086
Fax: (310) 773-5573
E-mail: *MCarney@sssfirm.com*
        *LWelling@sssfirm.com*
        *Skmeier@sssfirm.com*

Attorneys for Plaintiff John Roe JB 65

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

8/26/2024 11:12:45 AM

Clerk of the Superior Court
By M. Estrada        ,Deputy Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO

| | |
|---|---|
| John Roe JB 65, | Case No.: **24CU008107C** |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| v. | 1. **NEGLIGENCE** |
| DOE 1, a corporation; DOE 2, a corporation; DOE 3, an entity of unknown form; DOE 4, an individual; and DOES 5 to 100, | 2. **NEGLIGENT SUPERVISION OF A MINOR** |
| | 3. **SEXUAL ABUSE OF A MINOR** |
| | 4. **NEGLIGENT HIRING, SUPERVISION, AND RETENTION** |
| | 5. **NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE PLAINTIFF** |
| Inclusive, | 6. **BREACH OF MANDATORY DUTY** |
| Defendants. | 7. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS** |
| | **[DEMAND FOR JURY TRIAL]** |

*(Left margin, vertical text)* **SLATER SLATER SCHULMAN LLP**  8383 Wilshire Blvd., Ste. 255  Beverly Hills, CA 90211  Tel: (310) 341-2086 | Fax: (310) 773-5573

Plaintiff, John Roe JB 65, of and for his causes of action against Defendants, and each of them, complains and alleges as follows:

## INTRODUCTION

1.    This case involves egregious sexual and emotional abuse of a child.

2.    In 1978 when Plaintiff John Roe JB 65 was only 14 years old, he was repeatedly sexually abused by the foremost religious authority within Defendants' local congregation. The severe sexual abuse occurred entirely on Defendants' premises, and led to permanent physical and psychological damage which still affects Plaintiff to this day.

## PARTIES

3.    Plaintiff John Roe JB 65 ("**Plaintiff**") is an adult male over the age of forty at the time of this filing and a resident of the County of Los Angeles, State of California. As a victim of childhood sexual assault, as defined by section 340.1 of the Code of Civil Procedure, the name "John Roe JB 65" is not the Plaintiff's actual name, but is a fictitious name utilized to protect his privacy. John Roe JB 65 is entitled to protect his identity in this public court filing by not disclosing his name. (See *Doe v. Lincoln Unified School District* (2010) 188 Cal.App.4th 758.) As a minor, Plaintiff was the victim of unlawful sexual assault, molestation, abuse, and other extreme misconduct by DOE 4.

4.    Plaintiff's full identity has been concealed from public court filings to prevent those not directly involved in this action from learning his identity and making his identity public, as such a public disclosure would further harm Plaintiff and his family.

5.    Defendant DOE 1, is and was at all relevant times herein mentioned, the religious entity, located at San Diego, California, through which DOE 4 held and used his position as "Bishop" to groom and sexually abuse Plaintiff. DOE 1 is a corporation duly organized and operating pursuant to the laws of the State of Utah. DOE 1 operates wards, meetinghouses, congregations, temples and other houses of worship within the State of California. DOE 1 does business with and conducts continuous and systemic activities in California. DOE 1's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.  DOE 1 is registered to do business in California,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

and the presiding Bishop serves at the pleasure of and subject to the direct and absolute control of DOE 1. The divisions of the CHURCH are the wards, stakes and areas. DOE 1 is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

6.      Defendant DOE 2 is and was at all relevant times herein mentioned, a religious entity and subsidiary of DOE 1. DOE 2 is a corporation duly organized, and operating pursuant to the laws of, the State of Utah. DOE 2 operates properties, temples and other houses of worship within the State of California. DOE 2 does business with and conducts continuous and systemic activities in California. DOE 2's principal place of business is 50 East North Temple, Floor 20, Salt Lake City, State of Utah 84150.  DOE 2 is registered to do business in California, and operates, maintains and manages DOE 1's properties at the direction of and under the control of DOE 1. Doe 2, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

7.      Defendant DOE 3, is and was at all relevant times herein mentioned, a religious entity and subsidiary of DOE 1. DOE 3 is a religious entity of unknown form duly organized, and operating pursuant to the laws of, the State of California. DOE 3 does business with and conducts continuous and systemic activities in California. DOE 3's principal place of business is 1590 East H Street, Chula Vista, CA 91913.  DOE 3 is registered to do business in California, and operates, maintains and manages DOE 1's congregations and wards within San Diego County at the direction of and under the control of DOE 1. DOE 3 has, or as alleged herein had, responsibility for some or all operations in San Diego County, California. DOE 3 reports directly to DOE 1. DOE 3, is independently liable for its own conduct as alleged herein, is liable as a successor in interest to another entity, and/or is an alter ego of Defendants.

8.      The Defendants each assumed responsibility for the wellbeing of their members, whether as clergy or volunteers appointed by DOE 1. In their capacities as Bishop, and other positions such as Stake President, Relief Society President, visiting teacher, Missionaries, Sunday School and Primary School teacher; Defendants and their agents placed individuals in positions of

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

responsibility and authority over Church members. As a result, they each had a special relationship with members of the congregation, including the minor Plaintiff. This relationship gave rise to a duty to protect members of the congregation, including the minor Plaintiff from a foreseeable risk of harm. At all relevant times, the Defendants assumed special responsibilities towards its members including having a disciplinary and red flagging system meant to identify and track sexual predators and other dangerous individuals within the membership in order to protect innocent child members from the harm they might inflict.

9.      Defendants' income comes from member tithes which are turned over to DOE 1 for investment and other uses, including support of the administrative expenditures of the Defendants' wards, stakes and areas. DOE 1 does not provide information about their finances to their members or the public. Upon information and belief, DOE 1 receives more than seven (7) billion dollars a year in tithing from members. Upon information reported publicly in the media, DOE 1 owns financial assets and real estate in excess of 200 billion dollars.

10.     The true names and capacities, whether individual, plural, corporate partnership, associate, or otherwise, of Defendants DOES 5 through 100, inclusive, are unknown to Plaintiff at this time, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the Defendants fictitiously named herein as a DOE is legally responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to and that the acts and omissions of said Defendants was the legal cause of the injury to Plaintiff and the resulting injury and damages to Plaintiff as hereinafter alleged. Plaintiff will amend this Complaint to assert the true names and/or capacities of such fictitiously named Defendants when the same have been ascertained.

11.     Plaintiff is informed and believes and thereupon alleges that, at all times mentioned herein, Defendants were the agents, servants, employees, successors-in interest and/or joint venturers of their co-defendants and were, as such, acting within the purpose, course, scope and authority of said agency, employment, successor-in-interest and/or joint venture and that each and every Defendant as aforesaid was acting as principal and was negligent in the selection and hiring and retention of each and

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

1  every Defendant as an agent, employee, successor-in-interest and/or joint venture.

2      12.    All of the acts, conduct and nonfeasance herein carried out by each and every

3  representative, employee or agent of each and every corporate business Defendant, was authorized,

4  ordered and directed by their respective Defendant's corporate or business employers, officers,

5  directors and/or managing agents; that in addition thereto, said corporate or business employers,

6  officers, directors and/or managing agents had advance knowledge of, authorized and participated

7  in the herein described acts, conduct and nonfeasance of their representatives, employees, agents

8  and each of them; and that in addition thereto, upon the completion of aforesaid acts, conduct and

9  nonfeasance of the employees and agents, the aforesaid corporate and business employers, officers

10  directors, and/or managing agents, respectively ratified, accepted the benefits of condoned and

11  approved of each and all said acts, conduct or nonfeasance of their co employees, employees and

12  agents.

13      13.    This is an action for childhood sexual abuse brought pursuant to Code of Civil

14  Procedure section 340.1, subdivision (a)-(d) and any other applicable statute. Prior to the December

15  31, 2022 filing deadline, Plaintiff and DOE 1 entered into a tolling agreement that extended the time

16  to file until August 26, 2024. The misconduct described herein began in 1978 when Plaintiff John

17  Roe JB 65 was a minor, 14 years old. Plaintiff is over the age of forty.

18      14.    Moreover, as stated herein and at all times relevant, Defendants, each of them, and

19  DOES 5 through 100, knew or had reason to know, or were otherwise on notice, of the misconduct

20  alleged herein, which created the risk of childhood sexual assault by an employee, volunteer,

21  representative, or agent, and the person or entity failed to take reasonable steps or to implement

22  reasonable safeguards to avoid acts of childhood sexual assault. For purposes of subdivision (c),

23  providing or requiring counseling is not sufficient, in and of itself, to constitute a reasonable step or

24  reasonable safeguard. As such, Plaintiffs complaint is timely.

25      15.    DOE 4 was an employee, agent, servant, member, and/or volunteer of Defendants

26  when he sexually assaulted the Plaintiff—then a minor.

27      16.    During the period of childhood sexual assault and/or abuse of Plaintiff, Defendants

28

supervised and exercised control over Plaintiff's abuser.

17.     Each Defendant is responsible, in some manner, for the events and happenings herein referred to, thereby legally causing the injuries and damages to Plaintiff as hereinafter alleged.

18.     Except as otherwise noted, a reference to "Defendants" in this Complaint shall include DOE 1, DOE 2, DOE 3, DOE 4 and DOES 5 through 100, inclusive.

## JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has their main place of business in, and/or systematically and continually has conducted and continues to conduct business in the County of San Diego and the State of California.

20.     The subject incidents upon which this Complaint are based occurred in the City of San Diego, within the County of San Diego, in the State of California. As such, venue is proper in the San Diego County Superior Court of California.

## FACTUAL ALLEGATIONS
### (Common to All Causes of Action)

21.     DOE 1 is led by the President, also known as the Prophet, who selects two others as counselors to assist him in his functions of overseeing the Church. The President and his Counselors function as the First Presidency, which is the highest governing body of the Church.[1]

22.     The Quorum of the Twelve Apostles is the second-highest governing body of the Church. The apostles are regarded by Church members as "special witnesses" of Jesus Christ throughout the world. They travel frequently, addressing congregations of members and meeting with, advising, and managing local leadership.

23.     Together, the First Presidency and the Quorum of the Twelve Apostles declare and establish policy, and oversee the entire Church, including every Stake and Ward in California.[2]

24.     The Quorum of the Seventy exists to assist the Quorum of the Twelve Apostles in the overseeing, directing and managing local leadership and they serve in locations throughout the world. There are currently twelve Quorums of the Seventy, each assigned to a designated

[1] https://www.churchofjesuschrist.org/learn/global-leadership-of-the-church?lang=eng
[2] [DOE 1] Gen. Handbook, Ch. 5 § 5.1.1.1 at 26 (Aug. 2023)

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

geographical location called an Area. Members of the Quorum of the Seventy live and work within the Area they serve, including California, and report directly to the twelve apostles.

25.    Each Area that a Quorum of the Seventy oversees is comprised of Stakes and within each Stake are Wards. The Stakes are directed and controlled by a Stake President, who acts under the direction for the Quorum of the Seventy in his Area. Stake Presidents, acting with approval of the First Presidency, can call a member to become a Bishop.[3] In California, there are an estimated 147 Stakes.

26.    Bishops, appointed and overseen by the Stake President, are responsible for the spiritual development of the Ward's members, focusing on the rising generation of children.[4] Bishops are also responsible for the Ward's finances and record keeping.

27.    Plaintiff John Roe JB 65 was a minor child and a member of Defendants' Church, in San Diego, California.  DOE 4 was a "Bishop" of DOE 1 and used his position of authority therein to groom and to sexually abuse Plaintiff. Abuse by DOE 4 began when Plaintiff was just 14 years old. Intent on manipulating Plaintiff's emotions and taking advantage of his innocence, so that he eventually could sexually abuse him, DOE 4 exploited Plaintiff's fragile mental state to cause him extreme fear, anxiety, and confusion; coercing and manipulating Plaintiff in order to gain further power and control over him. All tactics employed for abuse purposes occurred during the most vulnerable time of Plaintiff's life.

28.    Eventually, DOE 4 initiated extreme sexual abuse of Plaintiff. Plaintiff endured ongoing, humiliating events of child molestation by DOE 4, a figure of religious authority, whom Plaintiff had been taught to trust with his life and well-being and had never been given the choice but to trust.

29.    Plaintiff is informed and believes and thereupon alleges, that, at all times herein mentioned, Defendants knew DOE 4 was using his position of authority within the Defendants'

---

[3] [DOE 1] Gen. Handbook, Ch. 6 § 6.2.1.5 at 33 (Aug. 2023)

[4] [DOE 1] Gen. Handbook, Ch. 7 § 7.1 at 45 (Aug. 2023)

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

Church to groom and to sexually abuse one of its minor members, Plaintiff, and Defendants failed to take reasonable steps to protect him.

30.    DOE 4 engaged in oral copulation and anal rape of Plaintiff at Defendants' controlled events and meetings and on Defendants' properties.

31.    In 1978, the abuse took place within the "Bishop's" office on Defendants' premises.

32.    In 1978, Defendants, bishops and/or counselors knew, should have known, reasonably suspected, and were otherwise on notice of the ongoing verbal, physical and sexual abuse by DOE 4. The abuse took place between 5 and 9 times within an approximately two-month span. As such, Plaintiff was called into DOE 4's office repeatedly in quick succession, leaving no reasonable basis to assume a benign explanation for these reoccurring meetings. This pattern unfolded in the evening after "Mutual" events for youth members, at a time when the meetinghouse was well-occupied. On at least one occasion, another individual was waiting outside DOE 4's office to meet with him after the sexual abuse of Plaintiff. The abuse itself, while occurring in each instance on Defendants' property, was perpetrated by the most visible and highest-ranking member of Defendants' congregation. In addition to the knowledge Defendants had or should have had at the time of abuse, Plaintiff disclosed the abuse to the "Bishop" of a different ward in or around 1991. This "Bishop" ignored and disregarded Plaintiff, just as Defendants had done when the abuse was ongoing. Defendants thus had notice of the extreme sexual abuse at all times during and after its commission, yet they elected to protect DOE 4 and retaliate against Plaintiff.

33.    By 1978 Plaintiff was a faithful member of Defendants' Church serving a southern portion of San Diego and the nearby city of Imperial Beach. He had been baptized into the Church by DOE 4 and attended youth activities like Tuesday night "Mutual." As such, Plaintiff was very familiar with DOE 4, as was the rest of the congregation with their ward's "Bishop." While too young to understand the foreboding nature of the interaction, Plaintiff when baptized was forced to change into the appropriate attire for the event in front of DOE 4. Plaintiff had stripped down to his underwear, which he left on given DOE 4 was watching him change. DOE 4 proceeded to order Plaintiff to also remove his underwear, leaving the 8-year-old nude in the same room as the adult

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP

8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

"Bishop." While uncomfortable, Plaintiff proceeded as he was told, knowing that DOE 4 was the singular highest authority in the ward. Now 6 years later at 14 years old, Plaintiff again did as he was told when the leader of "Mutual" instructed Plaintiff to go see DOE 4 in his office. Plaintiff anticipated the conversation being disciplinary in nature, and DOE 4 had Plaintiff wait in the office for another youth member to arrive for the conversation. Once it became clear that the other individual was not coming, DOE 4 proceeded to caress and fondle Plaintiff's leg and genitals over his clothing. DOE 4 then instructed Plaintiff to stand up, before unzipping Plaintiff pants and performing oral sex until ejaculation. Shocked, Plaintiff left the office after being instructed by DOE 4 not to speak to anyone regarding the encounter.

34.     Several days later, again during "Mutual," DOE 4 instructed Plaintiff to visit his office after the evening's activities. Plaintiff felt he was in no position to disobey orders from the "Bishop" of the Church and returned to the office full of fear. As Plaintiff anticipated, the same series of events unfolded, as they would several more times during a two-month span. On the final occasion that Plaintiff followed DOE 4's orders and came to his office, DOE 4 further escalated the sexual abuse. Having told Plaintiff he wanted to try something different, DOE 4 bent Plaintiff over his desk. DOE 4 began rubbing his penis on Plaintiff's anus before Plaintiff told him that he was in pain. Plaintiff felt DOE 4 continue rubbing his penis on him before then feeling a wet substance on his buttocks. It was then that DOE 4 inserted his penis into Plaintiff's anus, causing Plaintiff to react audibly from the pain and beg DOE 4 to stop. As Plaintiff was leaving, DOE 4 in an aggressive tone told Plaintiff not to bother reporting the rape, as no one would believe him. Plaintiff quickly went to a restroom to wipe the substance off his buttocks and anus and noticed blood on the tissue paper. The sodomy would result in a large hemorrhoid that would rip every two to three weeks thereafter, a constant reminder of the physical and emotional pain inflicted by Defendants' "Bishop." Plaintiff, who had been an entrenched member of Defendants' Church - a large part of his social life and identity - was now too terrified to return. Uncoincidentally, Plaintiff was told by his father that Defendants did not want him back at the Church. Plaintiff's father, who volunteered to teach Church youth in basketball, was also told he was not welcome back. Defendants had not only made the

1    decision to protect DOE 4, but blamed, attacked, and cast aside Plaintiff and his family. The

2    emotional scars Defendants have left on Plaintiff remain equally as painful as the physical.

3        35.     Each Stake creates and maintains meticulous sets of membership records which are

4    reviewed and controlled by DOE 1. Membership records are DOE 1's way of tracking its members.

5    Members are not allowed access to their records and must receive approval to view them under the

6    supervision of the Bishop. These records include names, addresses, callings, and temple

7    recommendations. The records also contain additional membership information such as new

8    members, members in military service, members who are adopted, children who are born out of

9    wedlock, and records of children of divorced parents. Records are created by the local Bishops,

10   approved by the Stake President, and ultimately transmitted to DOE 1.

11       36.     Records with "annotations" are also maintained by Defendants. Annotations are

12   made where a member's conduct has threatened the well-being of other persons or of the Church as

13   a whole. Annotations are made when a member is disciplined by the Bishop or Stake President for

14   ***"incest, sexual offense against or serious physical child abuse, plural marriage, an elective***

15   ***transexual operation, repeated homosexual activities (by adults), or embezzlement of church***

16   ***funds."*** All annotations placed on a member's record are approved by the First Presidency.

17       37.     Defendants maintain a pattern and practice of concealing abuse from the authorities,

18   and signals that its members should conceal and/or fail to report abuse so as to keep "the Church

19   from being inappropriately implicated in legal matters." *See President Russell M. Nelson Letter*

20   (August 4, 2020). Through this policy of concealment, the Defendants ratify abusive conduct,

21   perpetuating a culture of concealment and encouraging a lack of cooperation among Church

22   members with law enforcement.

23       38.     The Stake Presidents and Bishops Handbook states as follows: "[i]n instances of

24   abuse, the first responsibility of the Church is to assist those who have been abused, and to protect

25   those who may be vulnerable to future abuse."  In conjunction with this doctrine, Utah's Supreme

26   Court has characterized the Helpline as "a 1-800 number that bishops and other Church clergy can

27   call when they become aware of possible abuse. The Help Line is available 24 hours a day, 365 days

28

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

a year and is staffed by legal and counseling professionals who 'provide guidance to the bishop on how to protect the [victim] from further abuse, and how to deal with the complex emotional, psychological, and legal issues that must be addressed in order to protect the victim.'"[5]

39.    In reality, DOE 1 primarily staffs the Helpline with attorneys of Kirton McConkie, one of the largest law firms in the State of Utah.  Rather than notifying law enforcement or other government authorities when Bishops and other Church clergy members call the Helpline regarding sexual abuse within the Church, Helpline operators transfer these calls to the Kirton McConkie attorneys, who advise the bishop not to report the abuse incident to law enforcement, misrepresenting clergy-penitent privilege laws as their reasoning.

40.    Defendants' policies and protocols further direct teachers and other mandated reporters who suspect a minor may report abuse to them to encourage the minor to instead speak with a Bishop or Stake President and thus circumvent their duty to disclose and report abuse.

41.    In another sexual abuse-related civil lawsuit against the Church and its agents, a Kirton McConkie attorney "acknowledged during a pretrial deposition that the firm uses information gleaned from helpline calls to identify cases that pose a high financial risk to the [] Church."[6]

42.    In other words, DOE 1 implements the Helpline not for the protection and spiritual counseling of sexual abuse victims, as professed in Church doctrine and literature, but for Kirton McConkie attorneys to snuff out complaints and protect DOE 1 and its wards from potentially costly lawsuits. This is consistent with the instructions set forth in President Russell M. Nelson Letter, dated August 4, 2020, encouraging congregants to avoid cooperating with authorities asking for information on abuse.

43.    Defendants' actions embody a culture that protects sexual predators, rather than innocent and vulnerable children. Defendants handled the repeated allegations internally as a "matter of sin" and not one leader reported any matter to police. Instead, Defendants, their bishops,

---

[5] MacGregor v. Walker, 2014 UT 2 ¶2,322 P.3d 706, 707 (2014) [internal citation omitted in original].

[6] See The Church Has Been Accused of Using a Victim's Hotline to Hide Claims of Sexual Abuse (https://www.vice.com/en_us/article/d3n73w/duty-to-report-the-mormon-church-has-been-accused-of-using-a-victims-hotline-to-hide-sexual-abuse-claims?utm_medium=vicenewstwitter.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

and personnel, allowed DOE 4 to continue completely unhindered and protected, even in his predatory conduct. Defendants, their agents, and employees, including bishops, counselors, or personnel mentioned herein, DOES 5- 100, and each of them, acted to protect the heinous and unforgiveable acts of DOE 4, and in such action taken against Plaintiff's innocence and vulnerabilities, were careless, reckless, negligent, consciously disregarding a minor's rights.

44.    At all times herein mentioned, Defendants and each of them (1) knew how conducive the Church premises were to sexual abuse and sexual predators, and that sexual predators, such as DOE 4 in particular, had apparent, if not actual, authority within the Church community and on Church premises while 'acting', either literally and/or figuratively, as members of a priesthood (i.e., bishops, counsellors, elders, etc.) serving an important calling (i.e. Temple Worker); (2) knew that members of the Church priesthood and specifically, DOE 4, systematically and continuously leveraged any and all authority which the title and association with CHURCH, conceivably provided Defendant within the community, over followers of their faith, which at all relevant times herein included Plaintiff; and (3) knew that leaving Plaintiff or any youth members of the Church under the supervision of DOE 4 or within his presence and otherwise unattended, presented a risk of imminent harm to those youth members and did harm at least one of them, this Plaintiff.

45.    Defendants provided direct access to a large youth community wherein a danger to the community, DOE 4, wielded power over the Plaintiff.

46.    Plaintiff is informed, believes, and thereupon alleges that other staff, employees, volunteers, leaders, and officers knew or should have known that DOE 4 was isolating and taking minor children, including Plaintiff, and committing inappropriate behavior with minor children. Therefore, Defendants knew or should have suspected that DOE 4 was conducting inappropriate behavior and conduct with minor children, including Plaintiff, at DOE 1's ward and congregation and failed to take any remedial action prior to his sexual assault of Plaintiff.

47.    Prior to, during, and after DOE 4's sexual assault and/or sexual abuse, and molestation of Plaintiff, Defendants, through their agents, representative, servants, employees, and/or volunteers knew or should have known, reasonably suspected, and/or were otherwise on

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

notice, that DOE 4's conduct and relationship with young children, including Plaintiff, was inappropriate, unlawful, wrongful, and/or otherwise created a risk of childhood sexual assault.

48.     Notwithstanding their knowledge of DOE 4's sexual assault and/or sexual abuse, and molestation of Plaintiff and other minor children, Defendants intentionally and purposely failed to notify or warn other students, parents of children active in the congregation,  or any other persons of the possible risk of further childhood sexual abuse by DOE 4, limit or supervise his access to children, including Plaintiff, and notify law enforcement and other appropriate agencies of the known sexual assault and/or sexual abuse, and molestation of Plaintiff.

49.     Further, Defendants' failure and/or refusal to report the sexual assault and/or sexual abuse of Plaintiff by their Elders, Bishops, employees, and/or agents created a foreseeable risk of continued sexual assault and/or abuse of Plaintiff by DOE 4.

50.     As a direct result of Defendants' failure and/or refusal to timely and adequately act to prevent, stop, and report DOE 4's unlawful and inappropriate misconduct, DOE 4 was able to continue his sexual assaults and/or sexual abuse, and molestation of Plaintiff.

51.     Defendants acting through their representative, agents and employees, are liable to Plaintiff for harm from the sexual assault, abuse, and other misconduct committed by DOE 4 because, inter alia, Defendants:

a)  Negligently hired, supervised, retained, monitored, and/or investigated DOE 4.

b)  Breached their duty to implement and enforce adequate policies, guidelines, training, education, and procedures aimed at preventing, deterring, uncovering, and reporting instances of child sexual assault and/or abuse by adults, including its agents, servants, representatives, staff, and volunteers.

c)  Negligently and/or intentionally failed to report the known and/or reasonably suspected sexual assaults and/or sexual abuse, and molestation of Plaintiff to law enforcement.

52.     Defendants also intentionally and willfully implemented various measures intended and designed to, or which effectively, made DOE 4's conduct harder to detect including, but not

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

limited to:

    a) Permitting DOE 4 to remain in a position of good standing after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that DOE 4 sexually abused and/or sexually assaulted, and molested minor children, including Plaintiff.

    b) Permitting DOE 4 continued and/or unsupervised access to Plaintiff, after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, of DOE 4's misconduct that created a risk of childhood sexual assault.

    c) Failing to inform or concealing from law enforcement officials of the fact that Plaintiff and others were or may have been sexually assaulted after Defendants knew or should have known, reasonably suspected, or were otherwise on notice, that DOE 4 had, and/or was, engaged in the sexual assault of Plaintiff, thereby creating the circumstance where Plaintiff and others were less likely to receive medical/mental health care and treatment, thus exacerbating the harm to Plaintiff.

    d) Holding out and affirming DOE 4 to Plaintiff and Plaintiff's parent, other children and their parents, and to the community as being in good standing and trustworthy.

    e) Failing to take reasonable steps, and to implement reasonable policies, procedures, and safeguards to avoid, detect, and report acts of unlawful sexual conduct by employees, including DOE 4 with minor children.

    f) Failing to implement a system or procedure to supervise or monitor employees, volunteers, representatives or agents to ensure that they did not molest or assault minors in Defendants' custody or care, including Plaintiff.

53.    Defendants, and each of them, negligently, intentionally, maliciously and/or willfully refused to, and/or did not act reasonably to stop, inhibit, and/or report DOE 4 to law enforcement prior to, during, and/or after their sexual assault and/or sexual abuse, and molestation of Plaintiff, thereby allowing the assault to occur and to continue unabated.

54.    Plaintiff is informed, believes, and thereupon alleges, that Defendants' failure and/or

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

refusal to satisfy their duties to Plaintiff was a part of Defendants' intended plan and arrangement to conceal wrongful acts, to avoid and inhibit detection, to block public disclosure, to avoid scandal, to avoid the disclosure of their tolerance of child sexual molestation and assault, to preserve a false appearance of propriety, and to avoid investigation and action by public authority including law enforcement.

55.    Plaintiff is informed and believes, and on that basis alleges, that such actions were motivated by a desire to protect the reputation of Defendants and each of them, and to protect the monetary support of Defendants while fostering an environment where such assault could continue to occur.

56.    The wrongful, intentional, negligent acts and/or omissions of Defendants, and each of them was a legal cause of the childhood sexual assaults that caused injuries to Plaintiff.

## FIRST CAUSE OF ACTION
### NEGLIGENCE
### (Plaintiff Against All Defendants and DOES 5-100)

57.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

58.    Defendants are persons or entities who owed a duty of care to the Plaintiff and/or to the minor's parent or had a duty to control the conduct of DOE 4 by way of the special relationship existing between those individuals.

59.    Defendants knew or should have known of DOE 4's misconduct and inappropriate sexual behavior directed by DOE 4 to minor Plaintiff John Roe JB 65.

60.    Despite having knowledge of the misconduct, Defendants failed to take any preventive action to control the conduct, failed to warn, report, and/or confront Plaintiff John Roe JB 65 or his parents regarding the abuse, despite having a legal duty to do so.

61.    As a result of Defendants' negligence, Plaintiff John Roe JB 65 was sexually abused by DOE 4.

62.    Had said Defendants fulfilled their duties and responsibilities to Plaintiff in the

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

special relationship had with minor Plaintiff, he would not have been subjected to the misconduct aimed against him.

63.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SECOND CAUSE OF ACTION
## NEGLIGENT SUPERVISION OF A MINOR
### (Plaintiff Against All Defendants and DOES 5-100)

64.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

65.    Defendants, their agents and or employees, each of them, were responsible for the care, custody, control, supervision and protection of the minor children, like Plaintiff, entrusted to them due to existing special relationship and/or in the course of community involvement with Defendants' religion traditions as carried out by Defendants' employee, agent, and/or representative, DOE 4, on Defendants' premises. Thus, each of these said defendants had a duty to adequately and properly supervise, monitor and protect Plaintiff from known and knowable dangers; like DOE 4, a figure of authority for the Defendants' church community shared with Plaintiff.

66.    Defendants breached their duty to properly and adequately supervise, monitor and protect Plaintiff by, in part, ignoring clear and obvious signs that DOE 4 was engaged in repeated inappropriate and harassing relationships with Plaintiff; allowing Plaintiff to spend unsupervised one-on-one time with DOE 4; ignoring and turning a blind-eye to Plaintiff's whereabouts and wellbeing, so that he could be with DOE 4; and allowing DOE 4 to repeatedly sexually harass and abuse the minor Plaintiff on the Church premises.

67.    Had Defendants adequately and properly supervised, monitored, and protected its students, Plaintiff would not have been harmed.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

68.     Defendants also recklessly and negligently failed to implement and/or enforce policies or procedures that were aimed at preventing or detecting the sexual abuse of its youth community, which fell well below the standard of care.

69.     Had Defendants, each of them, adequately performed their duty and responsibility, then Plaintiff would not have been subjected to the extreme, continuous, and unrelenting sexual assault and harassment he endured, and which still impacts his life today, as alleged herein.

70.     As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### THIRD CAUSE OF ACTION

### SEXUAL ABUSE OF A MINOR

### (Plaintiff Against All Defendants and DOES 5-100)

71.     Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

72.     While Plaintiff was a member at Defendants' Church, DOE 4 took advantage of his position of authority and trust to engage in unlawful sexual acts and other harmful misconduct with Plaintiff. Plaintiff did not consent to the acts, nor could Plaintiff have consented to the acts given his age.

73.     Defendants ratified DOE 4's sexual abuse of Plaintiff because Defendants had knowledge that he had harassed and potentially harmed Plaintiff, in addition to any other youth members, yet they intentionally turned a blind-eye and still allowed him to be in a position of power and authority and did nothing to prevent any further abuse from occurring, thus allowing DOE 4 to gain access to and ultimately manipulate and sexually abuse Plaintiff. Defendants did not discipline, denounce, or discharge DOE 4; as such, they instead accepted and thus ratified his conduct.

74.     At all times, Defendants, were employees or administrators who were acting within the course and scope of their employment or agency with DOE 1 when they ratified DOE 4's

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

criminal conduct and adopted it as if it were their own conduct.

75.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

76.    In committing the acts described herein, the conduct of DOE 4, Defendants, their agents, and employees, and DOES 5-100, were despicable, and done with malice, oppression and fraud, justifying an award of punitive damages against each of those defendants. Plaintiff will therefore seek a court order allowing an amended pleading that includes a claim for punitive or exemplary damages pursuant to C.C.P. section 425.14 against religious entities, DOE 1, DOE 2 and DOE 3.

## FOURTH CAUSE OF ACTION

## NEGLIGENT HIRING, SUPERVISION & RETENTION OF AN UNFIT EMPLOYEE

### (Plaintiff Against All Defendants and DOES 5-100)

77.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

78.    Defendants, their agents, and employees, including bishops, clergy, and counselors, and DOES 5-100, had the responsibility and mandatory duty to adequately and properly investigate, hire, train, and supervise its agents and employees who would be working with minors and students to protect the minors within the Church community from harm caused by unfit and dangerous individuals within their employ and supervision.

79.    During the time Plaintiff was being sexually abused by DOE 4, Defendants knew or should have known of complaints of serious misconduct made against DOE 4, yet Defendants, each of them, failed to properly and adequately investigate those complaints and failed to take appropriate disciplinary action against DOE 4.

80.    Instead, Defendants blamed, threatened, and attacked Plaintiff for compromising DOE 4's position in the Church and authority within the Church community. Defendants ignored,

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

enabled, and allowed DOE 4's repeated sexual abuse of Plaintiff on their property. When Defendants took action regarding the abuse, they resolved to ensure their "Bishop" remained in his role, instead ordering both Plaintiff and his father to stay away from the premises.

81.    Defendants knew or should have known that DOE 4 engaged in repeated misconduct against male members of the community, one being Plaintiff.

82.    Defendants, each of them, breached their mandatory duty to investigate properly and adequately hire, train, and supervise DOE 4 on Defendants' premises.

83.    Had Defendants, each of them, properly investigated, supervised, trained, and monitored DOE 4's conduct and actions they would have discovered that he was unfit to be given access to and have authority over minors. By failing to adequately supervise, monitor, or investigate, Defendants allowed DOE 4 to continue, unhindered, with his predatory conduct directed towards underage members of the Church community, including Plaintiff.

84.    Defendants negligently hired, supervised, retained, monitored, and otherwise employed DOE 4 and negligently failed to ensure the safety of a minor community member in the Church, Plaintiff, who was entrusted to Defendants' custody, care and control.

85.    Defendants also negligently failed to adequately implement or enforce any procedures or policies that were aimed at preventing, detecting, or deterring the sexual harassment or abuse of minors and students by members of the priesthood, Elders, and other agents; including the DOE 4.

86.    Had Defendants, each of them, performed their mandatory duties and responsibilities to monitor, supervise, and/or investigate their 'Bishops' and other agents, Plaintiff would not have been subjected to sexual abuse and other harmful conduct inflicted upon him.

87.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## FIFTH CAUSE OF ACTION

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

## NEGLIGENT FAILURE TO WARN, TRAIN, OR EDUCATE
### (Plaintiff Against All Defendants and DOES 5-100)

88.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

89.    Defendants, their agents and employees, each of them, had a duty to warn, train and educate their youth community in its custody, including Plaintiff, on known and knowable dangers posed by its faculty and staff. Defendants, their agents, and employees, and DOES 5-100, also had a duty to warn, train and educate its faculty and staff on its sexual harassment policy and inappropriate boundary crossing within the youth community.

90.    Defendants, their employees and/or agents, each of them, breached their duty to Plaintiff by failing to warn him of known and knowable dangers posed by its faculty and staff, including DOE 4; by failing to inform and educate him on its sexual harassment policies and the methods to identify, report, and respond to inappropriate sexual harassment by members of the priesthood; and by failing to train its faculty and staff, including DOE 4, on Defendants' sexual harassment policies.

91.    As a direct and legal result of the negligence of Defendants, their employees and/or agents, and DOES 5-100, Plaintiff was groomed, manipulated, and ultimately sexually assaulted and abused by DOE 4.

92.    Had Defendants, their employees and/or agents, fulfilled their duties and responsibilities, Plaintiff would not have been injured and damaged.

93.    As a direct and legal result of this negligent conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

### SIXTH CAUSE OF ACTION
### BREACH OF MANDATORY DUTY:
### FAILURE TO REPORT SUSPECTED CHILD ABUSE
### (Plaintiff Against All Defendants and DOES 5-100)

94.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

95.    Defendants, acting through their employees and agents, were at all times "mandated reporters" pursuant to the provisions of Penal Code section 11166., et seq., also known as the Child Abuse and Neglect Reporting Act. As mandated reporters of suspected child abuse, Defendants were legally obligated to personally report reasonably suspected incidents of child abuse to the police and/or child protective services within a very short period.

96.    Defendants, acting through their employees, had, or should have had a reasonable suspicion that DOE 4 was engaged in sexual misconduct, yet failed to report the suspected abuse to the authorities.

97.    Defendants' employees violated the Child Abuse and Neglect Reporting Act, Penal Code section 11166, et seq. They were acting within the course and scope of their employment when they violated the reporting requirements, and therefore Defendants are vicariously liable for that negligence.

98.    By failing to report suspected child abuse, Defendants allowed DOE 4 to continue, unhindered, in his abuse of minor children, including Plaintiff.

99.    As a direct and legal result of this conduct, Plaintiff suffered severe and permanent injuries including, but not limited to, physical and mental pain and suffering, severe emotional distress, psychological harm, physical injuries, past and future costs of medical care and treatment, and past and future loss of earnings and earning capacity, and other damages, in an amount not yet ascertained, but which exceed the minimum jurisdictional limits of this Court.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (Plaintiff Against Defendant DOE 4 and DOES 5-100)

100.    Plaintiff re-alleges and incorporates by reference herein each allegation contained herein above as though fully set forth and brought in this cause of action.

101.    Acting with knowledge of his superior position and special relationship with Plaintiff and realizing Plaintiff's special susceptibility to emotional distress due to Plaintiff's age and

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

inexperience and vulnerability, DOE 4 and DOES 5-100, commenced upon a course of brainwashing and threatening Plaintiff, a minor, so that he could ultimately coerce and convince Plaintiff to engage in unlawful sexual acts. At all times DOE 4 was an "Bishop" at his Church, and he used this position to gain Plaintiff's trust, knowing that he could then take advantage of Plaintiff sexually.

102.    DOE 4's misconduct was outrageous, particularly because DOE 4 utilized his position as the highest-ranking religious leader in the congregation to ensure Plaintiff's compliance. At all times before, during, and after the sexual abuse, Plaintiff felt that he had to continue coming to DOE 4's office to be assaulted as there was no higher authority to say otherwise. When Plaintiff was told not to disclose the abuse and that if he did, he would never be believed, he knew nothing other than to accept what DOE 4 told him as the truth. DOE 4 relied on the immeasurable disparity of power between "Bishop" and child to perpetrate the abuse. DOE 4 used this trust and vulnerability to his advantage by manipulating Plaintiff's emotions and exploiting him sexually.

103.    DOE 4's acts were intentional, willful, oppressive, and malicious and done for the purpose of causing Plaintiff to suffer emotional harm, humiliation, mental anguish, and emotional distress or with reckless disregard for the likelihood that he would cause Plaintiff such distress.

104.    As a direct and legal result of DOE 4's actions and misconduct, Plaintiff has been significantly damaged emotionally and physically.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff John Roe JB 65 prays for judgment against Defendants DOE 1, DOE 2, DOE 3, their employees and/or agents, DOE 4, and DOES 5 through 100, and each of them, as follows:

1.  For an award of special (economic) and general (non-economic) damages according to proof;

2.  Attorney's fees;

3.  For costs of suit incurred herein; and

4.  For such other and further relief as the Court deems just and proper.

SLATER SLATER SCHULMAN LLP
8383 Wilshire Blvd., Ste. 255
Beverly Hills, CA 90211
Tel.: (310) 341-2086 | Fax: (310) 773-5573

## **JURY DEMAND**

Plaintiff demands a trial by jury on all causes of action which may be tried by a jury.


Dated:                                    **SLATER SLATER SCHULMAN LLP**


By: _____
Michael W. Carney
Lauren A. Welling
Sarah Kissel Meier
Attorneys for Plaintiff

23
COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL